## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RANCHO VISTA DEL MAR, a California      )
corporation, 5440 Morehouse Drive Suite 4000    )
San Diego, California 92121,      )
     )
     Plaintiff,      )
     )     Case No. 22-141
     v.      )
     )
UNITED STATES OF AMERICA; UNITED      )
STATES DEPARTMENT OF HOMELAND      )
SECURITY; ALEJANDRO MAYORKAS,      )
Secretary of the United States Department of      )
Homeland Security, acting in his official capacity;    )
and AARON M. HEITKE, Chief Patrol Agent of    )
the San Diego Sector of the United States Customs   )
and Border Patrol, acting in his official capacity,    )
     )
     Defendants.      )
_____ )

### Complaint to Reverse and Set Aside Final Agency Action

This is a suit brought under the Administrative Procedure Act,[1] to reverse and set aside

the decision of the United States—acting through the Department of Homeland Security—to

terminate the construction contracts and abandon work on the partially finished border fence

immediately adjacent to property in San Diego County, California owned by Rancho Vista del

Mar ("Rancho Vista"), leaving behind materials purchased for the construction on site. The raw

cuts in the ground, partly completed concrete foundations, 30-foot-long steel bollards left to rust

on the ground, and remaining gap in the fence that funnels illegal immigrants onto Rancho

Vista's property where they trample and destroy fragile habitat, all combine to threaten extensive

---

[1] 5 U.S.C. § 702.

environmental damage to fragile, statutorily protected habitat for several endangered species on Rancho Vista's property, habitat that also has economic value to Rancho Vista.

The Government's decision to cancel its contracts for constructing this portion of the fence, is arbitrary, capricious, and should be set aside.

## PARTIES

1.      Plaintiff, Rancho Vista del Mar, is a corporation organized under the laws of the State of California and is the owner in fee of 496.56 acres of unimproved land in the Otay Mesa area of San Diego County, California, adjacent to the Mexican border. A map of the Rancho Vista property is attached as an Exhibit. Portions of Rancho Vista's land have been designated as non-native grassland, a fragile and rare habitat protected by California law; other portions are within or in close proximity to coastal wetland habitat, seasonal wetland vernal pool habitat, and other occupied endangered species habitat. This includes habitat for some of the 85 species prioritized for protection by the San Diego County Multiple Species Conservation Program, including designated critical habitat for the Quino checkerspot butterfly, the San Diego fairy shrimp, the Riverside fairy shrimp, the coastal California gnatcatcher, and the least Bell's vireo.

2.      Defendant, the United States of America, is a republic and a sovereign nation that acts through its various departments, agencies, and officials.

3.      Defendant, the United States Department of Homeland Security, is an agency of the United States of America responsible for providing border security along the United States-Mexico border in a manner that is consistent with the laws and Constitution of the United States.[2]

_____

[2] 6 U.S.C. § 111.

4.      Defendant, Alejandro Mayorkas, is the Secretary of the United States Department of Homeland Security. He is sued in his official capacity, as the government official ultimately responsible for the actions and decisions of the Department of Homeland Security challenged in this action.

5.      Defendant, Aaron M. Heitke, is the Chief Patrol Agent of the San Diego Sector, United States Customs and Border Patrol, a sub-agency of the Department of Homeland Security. He is sued in his official capacity as the United States official responsible for border security, including border fence construction adjacent to the Rancho Vista property.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction of this case under 5 U.S.C. §§ 701-706 (Administrative Procedure Act), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 2201 (the Declaratory Judgment Act).

7.      Venue is proper in the District of Columbia under 28 U.S.C. § 1391(e) because this is a civil action against the United States, agencies of the United States, and an officer of the United States, acting in his official capacity, who resides in and took the actions complained of in the District of Columbia.

## STATEMENT OF FACTS

8.      For many years Plaintiff, Rancho Vista, has owned several parcels of improved and unimproved land in the Otay Mesa area of San Diego County totaling 736.14 acres, including the 496.56 acres of unimproved land adjacent to the Mexican border.

9.      On March 21, 2019, Rancho Vista deeded to the United States for consideration a parcel of approximately 17.04 acres of its land, which the Government had requested for the

purpose of constructing a segment of the border fence immediately adjacent to Rancho Vista's property.

10.      About March 1, 2020, Defendants commenced construction of the border fence on the parcel Rancho Vista had deeded to the United States for that purpose. This construction included extensive grading, earth-moving, pouring of concrete foundations, and the installation of 30-foot-high steel bollards.

11.      By January 20, 2021, Defendants had completed many miles of border wall construction both to the east and the west of Rancho Vista's property. But a gap of about 700 feet of fence had not yet been completed nor had the finish work and cleanup been done on the parcel Rancho Vista had deeded to the United States. A large portion of the 700-foot gap is comprised of mountainous, rugged terrain consisting of steep bluffs and rock-faced slopes that have been excavated in anticipation of construction. Also left on-site, but not yet installed, are special water pipes that will collect the storm water runoff from this rugged terrain and convey it safely away from the site.

12.      On January 20, 2021, the President of the United States issued the "Proclamation on the Termination Of Emergency With Respect To The Southern Border Of The United States And Redirection Of Funds Diverted To Border Wall Construction," directing the immediate termination of work on the border fence, including the segment immediately adjacent to Rancho Vista's property. In relevant part, that Presidential Proclamation required:

> The Secretary of Defense and the Secretary of Homeland Security, in consultation with the Director of the Office of Management and Budget, shall direct the appropriate officials within their respective departments to . . . pause work on each construction project on the southern border wall, to the extent permitted by law, as

soon as possible but in no case later than seven days from the date of this proclamation. . . .[3]

13.    Defendants then made the decision to instruct their contractors to cease all work on the segment of border fence adjacent to Rancho Vista's property, leaving the area open to environmental destruction from the elements and from the undocumented immigrants who, in the hundreds, nightly pass through the gap Defendants have created in the fence, and stream across Rancho Vista's property. Because the border wall extends for miles to both the east and the west of Rancho Vista's property, the border fence configuration channels illegal immigrants crossing the border from Mexico to be channeled along the existing fence line until they reach the gap in the fence, through which they pass onto Rancho Vista's property.



---

[3] Proclamation No. 10142, 86 Fed. Reg. 7225 (Jan. 20, 2021).

14.     Had Defendants not made the decision to order their contractors to cease work on the border fence segment adjacent to Rancho Vista's property and to terminate their contracts, construction and restoration of the site could have been completed in a few weeks.

15.     Defendants' decision to cease all work in the middle of constructing the border fence adjacent to Rancho Vista's property has caused erosion, desedimentation, destruction of habitat, and threatened the continued existence of endangered species on and near Rancho Vista's property.

## FIRST CAUSE OF ACTION
### (Arbitrary and Capricious Action in Violation of the Administrative Procedure Act)

16.     Defendants' decision to order its contractors to cease all work on the border fence segment immediately adjacent to Rancho Vista's property, and Defendants' subsequent decision to cancel these contracts leaving the project uncompleted in the area adjacent to the Rancho Vista parcel were arbitrary, capricious, and otherwise not in accordance with the law. Defendants' decisions to cease all work on this border fence segment, and to leave this site in its unfinished condition, serves no valid public purpose, while inflicting severe damage to the environment and Rancho Vista's land—while incurring continued expense to store the unused and deteriorating construction materials left on the site by the abrupt departure of Defendants' contractors.

## SECOND CAUSE OF ACTION
### (Violation of the National Environmental Policy Act)

17.     The National Environmental Policy Act (NEPA) is "the basic national charter for protection of the environment."[4] The purpose of NEPA is to "promote efforts which will prevent

---

[4] 40 C.F.R. § 1500.1(a).

or eliminate damage to the environment."[5] NEPA's fundamental purpose is to guarantee that agencies take a "hard look" at the environmental consequences of their actions before such actions occur. To conduct a "hard look" the agency in question must (1) carefully consider detailed information regarding the action's potentially significant environment effects, and (2) make relevant information available to the public so that it may play a role in both the decision-making process and the implementation of the decision itself.[6]

18.     To implement NEPA's statutory requirements, agencies of the United States Government are required to prepare an environmental assessment for any agency action that may significantly affect the quality of the human environment.[7] An environmental assessment under NEPA is a "concise public document . . . [that] provide[s] sufficient evidence and analysis for determining whether to prepare an environmental impact statement or a finding of no significant environmental impact."[8] An environmental assessment helps public officials make decisions that are based on an understanding of the human and physical environmental consequences of the proposed project and take actions, in the location and design of the project, that protect, restore, and enhance the environment.

19.     In making the decision to order its contractors to abandon the border fence construction site adjacent to Rancho Vista's property, without closing the gap or cleaning up and finishing the site in a workmanlike manner, Defendants took a federal action that could significantly degrade the quality of the human environment by causing erosion, desedimentation, destruction of habitat, and threatens the continued existence of endangered species. Defendants

---

[5] 42. U.S.C. § 4321.
[6] *See* 42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1500.1.
[7] 40 C.F.R. § 1501.5.
[8] 40 C.F.R. § 1508.9.

took this action without preparing an environmental assessment and without any consideration

for the environmental effects of abandoning the site in its unfinished and environmentally

destructive condition, in violation of NEPA and Title 40, Section 1501.5 of the Code of Federal

Regulations.

20.     Although Congress authorized Defendants to waive some NEPA requirements so

the border fence could be constructed, that congressional waiver authorization does not extend to

this case, in which Defendants have acted to terminate construction.

### THIRD CAUSE OF ACTION
### (Violation of the Endangered Species Act )

21.     The Endangered Species Act (ESA) was enacted, in part, to provide a "means

whereby the ecosystems upon which endangered species and threatened species depend may be

conserved . . . [and] a program for the conservation of such endangered species and threatened

species[.]"[9]

22.     Section 2(c) of the ESA establishes that it is "the policy of Congress that all

Federal departments and agencies shall seek to conserve endangered species and threatened

species and shall utilize their authorities in furtherance of the purposes of this Act."[10] The ESA

defines "conservation" to mean "the use of all methods and procedures which are necessary to

bring any endangered species or threatened species to the point at which the measures provided

pursuant to this Act are no longer necessary."[11]

23.     To fulfill the substantive purposes of the ESA, federal agencies are required to

engage in consultation to "insure that any action authorized, funded, or carried out by such

---

[9] 16 U.S.C. § 1531(b).
[10] 16 U.S.C. § 1531(c)(1).
[11] 16 U.S.C. § 1532(3).

agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the adverse modification of habitat of such species . . . determined . . . to be critical . . . ."[12]

24.     Section 7 consultation is required for "any action [that] may affect listed species or critical habitat."[13] Agency action is broadly defined in the ESA's implementing regulations to include "(a) actions intended to conserve listed species or their habitat; (b) the promulgation of regulations; (c) the granting of licenses, contracts, leases, easements, rights-of-way, permits, or grants-in-aid; or (d) actions directly or indirectly causing modifications to the land, water, or air."[14]

25.     In making the decision to order its contractors to abandon the border fence construction site adjacent to Rancho Vista's property, without closing the gap or cleaning up and finishing the site in a workmanlike manner, Defendants took a federal action that may affect the populations of endangered species, including destruction of their habitat, located on and near Rancho Vista's property. Defendants took this action without considering the effects it may have on these populations of endangered species or their habitat, and without consulting with the United States Fish and Wildlife Service, in violation of the Section 7 consultation requirement.[15]

### PRAYER FOR RELIEF

Plaintiff, Rancho Vista del Mar, therefore, respectfully requests that this Court:

1.     Enter an order holding unlawful and setting aside Defendants' decisions to cease all work on the border fence segment adjacent to Rancho Vista's property;

---

[12] 16 U.S.C. § 1536(a)(2) ("Section 7 consultation").
[13] 50 C.F.R. § 402.14.
[14] 50 C.F.R. § 402.02.
[15] 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.14.

2.      Enter an order requiring Defendants to secure and finish the site in a workmanlike manner, including closing the gap in the fence, stabilizing the soils, cleaning up the site and removing all unused materials and waste on site;

3.      Award Rancho Vista del Mar its reasonable attorneys' fees and costs for bringing this action;

4.      Such other and further relief as the Court may deem just.


Dated: January 20, 2022                                        Respectfully submitted,


                                                               s/Nancie G. Marzulla
                                                               Nancie G. Marzulla
                                                               Marzulla Law, LLC
                                                               1150 Connecticut Ave NW,
                                                               Suite 1050
                                                               Washington, D.C. 20036
                                                               (202) 822-6760
                                                               nancie@marzulla.com
                                                               D.C. Bar No. 400985

                                                               Counsel for Plaintiff